STATE OF NORTH DAKOTA, Respondent, v. CLARA B. BLACK
and L. R. Montgomery, Appellants.

(223 N. W. 303.)

Opinion filed January 28, 1929.

*Jacobsen & Murray,* for appellants.

568.

*George F. Shafer,* Attorney General, *George H. Drowley,* State's Attorney and *C. F. Kelsch,* for respondent.

BURKE, Ch. J. The defendants were convicted of the crime of grand larceny of one red yearling heifer and one red spring calf, the property of one Noheart, and from an order overruling a motion for a new trial, the defendants appeal.

Before the trial defendants moved to quash the information on the ground that the defendants were not given a preliminary hearing for the crime of grand larceny, the crime charged in the information, and were not held to answer to the district court for such crime; that the offense charged in the complaint upon which they had a preliminary hearing was the offense of appropriating lost property. The state having rested, the defendants moved the court for a dismissal on the ground of variance between the proof and the information, which charged the larceny of two animals as a single offense, while, if larceny was committed, there were two distinct larcenies, at least thirty days apart. A motion to require the state to elect the offense upon which the defense relied on for a conviction was overruled. It is further contended that it was prejudicial error to permit the state's attorney in his argument to the jury to state, in reference to the defendant, Clara B. Black, that "Moustache Maud, the Queen of the Cattle Rustlers, should have known better than to pick a quarrel with any of the members of her household, and to have taken up with a man like Montgomery." Objection was made to this at the time and

was overruled by the court. "The evidence also fails to show that the defendants unlawfully or wrongfully took the animals from the possession of the complaining witness; that the undisputed evidence shows that the animals were in the lawful possession of defendants at the time it is claimed there was a conversion; that the undisputed evidence shows that at least six weeks intervened between the alleged butchering of the animals, showing two crimes, if any."

The first question is: Did the defendants have a preliminary examination on the charge of grand larceny? It is true that the crime named in the complaint before the magistrate is "the appropriating of lost property," and the charging part alleges: "That the defendants, Clara B. Black and L. R. Montgomery, while then and there having in their possession and under their control one red yearling heifer . . . and one red spring calf, then and there of the reasonable value of the sum of fifty dollars, the property of Albert Noheart, and while then and there well knowing that said animals were lost property, and that the said Albert Noheart was the true owner thereof, did wilfully, unlawfully and feloniously, convert and appropriate the same to their own use, without first having made such effort as was reasonable and just to find the true owner and to restore said lost property to him, the said owner."

Section 9914, Comp. Laws 1913, provides:

"One who finds lost property under circumstances which give him knowledge or means of inquiry as to the true owner, and who appropriates such property to his own use, or to the use of another person who is not entitled thereto, without having first made such effort to find the owner and restore the property to him as the circumstances render reasonable and just, is guilty of larceny."

Under this section the complaint before the magistrate does charge grand larceny; the time alleged in the information and the complaint is the same; the animals are the same; the parties are the same, and each charges grand larceny. At the preliminary examination the testimony was taken down, transcribed, and is a part of the record; the same witnesses were examined for the state and the testimony is practically the same as the testimony in the trial in the district court. We are of the opinion that there was no error in overruling the motion to quash the information.

The most serious question in the case is the question of whether there is any evidence in the case to support the charge of larceny. The defendant, Mrs. Black, keeps and maintains under fence a large tract of land of about two sections, and it is undisputed that since 1922 some of the cattle belonging to Noheart, the complaining witness, have been in Mrs. Black's pasture, to the knowledge of the complaining witness and Mrs. Black, and under an agreement that the complaining witness was to pay for the pasturage. Noheart testifies in substance as follows:

"These cows were going forward and back since 1924, more or less."

"Q. That is, forward and back to the Montgomery and Black ranch? A. Yes." He further testifies in substance:

"Whenever they were out there in 1924 I paid for it, and got the cattle back and then after awhile they got back so I got Mrs. Black to care for them again and paid her for it. . . . I paid her it was once in 1925 and once in 1926. . . . I got the red cow back in 1927. . . . Mrs. Black wrote me to come and get the cattle and pay the damages in 1926. . . . After the fire (this was in the spring of 1926) they went after the cattle, they only brought the cow and calf this one was left with Mrs. Black and stayed. . . ."

Q. "You had tried to get the cow before that and she told you you would not get it until you paid the damages, is that right?

A. Yes.

Q. Why did you leave your cow there so long, why didn't you get it before that?

A. Just on account of money.

Q. Now, you know your cow was there for about two years before you got her back didn't you?

A. Yes.

Q. And you know she was holding the cow until she got some money for damages?

A. We had a verbal agreement that she was to take care of the cow, that was the understanding. . . ."

He further testifies in substance: And as soon as I paid Mrs. Black she turned the cow over to me. In June 1926 I went to Mrs. Black's and butchered a steer. It was my steer. It had been born there on

the Black ranch. In March when we took the other cattle away we could not bring the steer and it was left with Mrs. Black. This steer was born on the Black ranch and never was at my place.

This is the testimony of the complaining witness whose property is the subject of the alleged larceny, and it is not disputed, but is corroborated by the testimony of Mrs. Black, and partly by the testimony of the state's witness, Vivian Rose. According to this testimony Mrs. Black was lawfully in possession of the two animals that she and Montgomery are charged with stealing.

Under § 6844, Comp. Laws 1913: "Any farmer, ranchman or herder of cattle, tavern keeper or livery stable keeper, to whom any horses, cattle or sheep shall be intrusted for the purpose of feeding, herding, pasturing or ranching shall have a lien upon said horses, mules, cattle or sheep for the amount that may be due for such feeding, herding, pasturing or ranching, and shall be authorized to retain possession of such horses, mules, cattle or sheep until the said amount is paid; provided, that these provisions shall not be construed to apply to stolen stock."

Mrs. Black was a bailee for hire and if there was a fraudulent conversion of the property, the offense or offenses under § 9934, Comp. Laws 1913, would be embezzlement and not larceny. Section 9934, supra, reads as follows:

"If any person being intrusted with any property as bailee, or with any power of attorney for the sale or transfer thereof, fraudulently converts the same or the proceeds thereof to his own use, or secretes it or them with a fraudulent intent to convert to his own use, he is guilty of embezzlement, whether he has broken the package or otherwise determined the bailment or not."

Embezzlement is the fraudulent appropriation of property by a person to whom it has been entrusted, § 9929, Comp. Laws 1913, while larceny is the taking of personal property accomplished by fraud or stealth, and with intent to deprive another thereof. Comp. Laws 1913, § 9913. The fiduciary relation of the defendants, which is the element distinguishing embezzlement from larceny was established. 9 R. C. L. 1288.

The property involved was not lost property, but was in the possession of the defendants with the knowledge and consent of complaining

witness, Noheart. He recognized the possession of the property in the defendants and their right to hold it until the pasturage or, as they stated, the damages were paid, and it was error for the court to submit the case to the jury upon the theory that the offense charged was larceny. Since it appears that the crime was that of embezzlement, if there was a crime, and not larceny, it follows that the instructions on grand larceny were not applicable to the case. The other questions raised are not likely to arise in a future prosecution and are not necessary to decide here.

Judgment of the lower court is reversed and the charge of grand larceny is ordered dismissed and the case is remanded to the trial court for further proceedings according to law.

BURR and BIRDZELL, JJ., concur.

NUESSLE, J. I concur in the result.

CHRISTIANSON, J. I concur in a reversal; but do not agree with the construction placed upon the evidence in the opinion prepared by Mr. Justice Burke.

As I read the evidence there is a conflict between the testimony of Noheart and the testimony of Mrs. Black as regards Mrs. Black's possession of the cattle at the time of the commission of the alleged offense. Mrs. Black testifies that the cattle were in her possession under an arrangement with Noheart whereby the cattle had been entrusted to her care and custody and she was entitled to compensation for such care and custody. But, as I understand Noheart's testimony, it is his claim that this arrangement (referred to in the prevailing opinion) was of a prior date and that it had been fully carried out and the cattle redelivered to him; but that the cattle had again strayed away and come upon Mrs. Black's premises and that while Noheart knew the cattle were there, no arrangement had been made at all whereby the cattle had been placed in Mrs. Black's care or custody. In short, as I read the record, there is evidence on the part of the prosecution sufficient to justify a finding that the defendants appropriated personal property belonging to and in the possession of the owner, Noheart, in such circumstances as to constitute larceny of such property; but that

574

the evidence on the part of the defendants is all to the effect that the property was in the custody and possession of the defendant Black and that if the property was appropriated by the defendants to their own use, the illegal appropriation constituted embezzlement, and not larceny. The evidence, however, clearly shows that the two animals were appropriated at wholly different times. If Noheart had come upon plaintiff's premises a week, ten days, or two weeks after the first animal had been taken and killed there would have been nothing to prevent him from getting the other animal. In the circumstances, it is clear that if the theory of the prosecution is correct and the defendants committed larceny, that there were two separate and distinct larcenies. This question was squarely raised upon the trial by objections to evidence and by motion to compel the prosecution to elect which of the two larcenies it would rely upon for a conviction. This motion was denied, and there was in effect submitted to the jury two separate offenses. And under the evidence it is not at all improbable that some members of the jury might have believed that the defendants committed the first alleged larceny and not the second, and that other members of the jury might well have believed that they committed the second and not the first.